UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SHEILA KAY GETTINGS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 1:11CV149 CAS<br>(TIA) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b). The suit involves an application for Disability Insurance Benefits under Title II of the Social Security Act.

**I.     Procedural History**

On October 2, 2008, Claimant filed an Application for Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Tr. 97-105)[1] alleging disability since September 20, 2008 due to inability to focus, blurred vision, dizziness after head injury, and pain down left side. (Tr. 47, 118). The application was denied (Tr. 47-51), and Claimant subsequently requested a hearing before an Administrative Law Judge (ALJ), which was held on May 25, 2010. (Tr. 20-44, 54-55). Claimant testified and was represented by counsel. (Id.). In a decision dated July 8, 2010, the ALJ found that Claimant had

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer. (Docket No. 11/filed March 17, 2011).

not been under a disability as defined by the Social Security Act. (Tr. 8-15). The Appeals Council denied Claimant's Request for Review on June 13, 2011. (Tr. 1-4). Thus, the ALJ's decision is the final decision of the Commissioner.

## II.   Evidence Before the ALJ

### A. Hearing on May 25, 2010

At the hearing on May 25, 2010, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 24-43). Claimant testified that she moved last year after getting a divorce. (Tr. 24-25). Claimant lives in an apartment with her disabled, nineteen-year old son. (Tr. 25). Claimant testified that her son is bipolar, schizophrenic, and anti-social. (Tr. 25). Claimant's date of birth is November 24, 1959 and finished the ninth grade. (Tr. 27-28). Although she has a driver's license, Claimant testified that she no longer drives, because she does not like to get out around people. (Tr. 28). Claimant is right-handed. (Tr. 38). Claimant has four children born in 1979, 1986, 1989, and 1991. (Tr. 41). Claimant's first husband died on June 15, 1999, and Claimant receives a widower's pension. (Tr. 41).

Claimant last worked in October 2008 when she had a head injury. (Tr. 26). Claimant was unable to stand, think, or write so Claimant quit her job. Claimant testified that she cannot work because of her headaches, pain in her shoulders, lower back, and leg. (Tr. 26). The ALJ noted that the record showed Claimant had no earnings in 2008, but she explained that the pizza place paid her cash. (Tr. 27).

Claimant testified that she was assaulted outside her place of employment and hit her head. (Tr. 26). After leaving work, Claimant had a couple of beers at Crystal's Bar and Grill, Claimant ran into an old friend and gave him a hug, and his wife pushed Claimant down. (Tr. 29).

Claimant received treatment in the hospital the night of the assault. (Tr. 29). Claimant testified that she received more treatment after she attempted suicide. (Tr. 30). Claimant experiences pain at the base of her skull where she was injured in the accident. (Tr. 39).

For pain relief, Claimant takes over-the-counter medications, because she cannot afford to go see a doctor. (Tr. 27). Claimant takes ibuprofen every four to six hours and Aleve and pain patches for sleeping. (Tr. 32). Before the accident, Claimant enjoyed being around people. (Tr. 28). Claimant testified that she cannot walk, because her knee collapses on her. (Tr. 30).

Claimant testified that her sons do the grocery shopping and all of her errands and laundry. (Tr. 31). Claimant can carry a gallon of milk or a case of soda. (Tr. 31). Claimant has no problems sitting. (Tr. 32). Claimant cannot stand for long, because her hip would start hurting. (Tr. 32).

When Claimant was two-years old, she had a steel plate placed in her head as a result of the injury she sustained from her uncle running over her. (Tr. 36). Since that time, Claimant testified that she has experienced depression and headaches. (Tr. 36). Claimant testified that during the week she experiences dizziness two to three days lasting for fifteen minutes. (Tr. 37). Claimant experiences migraine headaches every day varying in duration from two hours or lasting all day. Claimant testified that she experiences tingling in the tips of her fingers. (Tr. 37). Claimant cannot hold a glass of water with her left hand. (Tr. 38).

Claimant testified that she experiences blurred vision when she reads or watches television. (Tr. 33). Claimant cannot see the road signs when driving. (Tr. 33). Claimant has a pair of reading glasses and a pair of driving glasses. (Tr. 33). Claimant no longer drives, because she is afraid to be around anyone. (Tr. 34). Claimant testified that her ex-husband drove her to

the hearing, and they are still friends. (Tr. 30, 40).

At the end of the hearing, the ALJ opined that he did not consider Claimant to have any past relevant work sustained at the substantial gainful activity level, and counsel agreed. (Tr. 42). The ALJ found that since Claimant does not have any past relevant work to consider, he would not take testimony from the vocational expert. (Tr. 43). Counsel indicated that he did not want testimony from the vocational expert. (Tr. 43).

### 2. Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported that she stopped working on September 21, 2008, the day after the accident. (Tr. 118).

In the Function Report - Adult dated October 28, 2008, Claimant reported her daily activities to include smoking a cigarette after waking up, drinking a cup of coffee, taking a bath, and then talking to her daughter on the phone. (Tr. 125). Claimant indicated she does not do anything else except for crying and being depressed. (Tr. 125). Claimant listed washing and drying clothes, washing dishes, and dusting furniture as household chores she is able to do. (Tr. 127). Claimant indicated that she shops for food, cleaning supplies, and clothes every other week for thirty minutes to one hour. (Tr. 128).

In the Supplemental Questionnaire, Claimant indicated that she could use a computer for fifteen minutes. (Tr. 134).

In the Work History Report, Claimant reported working as a laborer for a pizza delivery establishment from April 2008 through September 2008. (Tr. 110). Her job duties included preparing pizzas, working as a cashier, waiting on people, delivering pizzas, and stocking supplies. (Tr. 111). Claimant lifted up to thirty pounds and frequently lifted ten pounds. (Tr.

111). Claimant supervised two to three people, and she hired and fired employees. (Tr. 112).

In the Report of Contact dated November 10, 2008, Claimant indicated that she missed the call, because she was visiting a friend. (Tr. 148).

In the Disability Report - Appeal, Claimant indicated that her lower back prevents her from stooping, bending, or lifting. (Tr. 154). Claimant reported her depression as being severe and she does not like being around people, and she has separated herself from her children and friends. (Tr. 157). Claimant indicated that as a result of the accident, she cannot bend, squat, or stoop or grab or lift anything without becoming dizzy. (Tr. 159).

In the Recent Medical Treatment, Claimant listed the emergency room at Southeast Hospital on June 21, 2009 for depression and attempted suicide.[2] (Tr. 161).

## III.   Medical Records

On September 21, 2008, Claimant received treatment at Saint Francis Medical Center for a neck injury from blunt trauma from a physical assault. (Tr. 168). The examiner noted Claimant's complaint is associated with alcohol. Claimant reported smoking a package a cigarettes each day for thirty years. Treatment in progress included a c-collar and backboard.

---

[2]The undersigned notes that Claimant did not submit any medical record to substantiate this assertion. Even if such records had been provided, the Court concludes that such medical records do not relate to the period on or before October 2, 2008 and address Claimant's condition and document her medical treatment received after the ALJ issued his decision. See e.g. Roberson v. Astrue, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding no error in Appeals Council's decision that new records prepared seven months after ALJ's decision described claimant's condition on date records were prepared, not on earlier date, and consequently were not material). The Regulations provide that an application is effective through the date of the ALJ's decision. 20 C.F.R. § 404.620. If the limitations set out in the new medical evidence indeed persist, Claimant's recourse is to file a new application for benefits, alleging an onset of disability after the date of the ALJ's decision in this case. See Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994).

(Tr. 168). Examination showed Claimant to be uncomfortable and experiencing mild pain and smelling of alcohol. (Tr. 169). The examiner noted an abrasion to occiput and tenderness over paraspinal muscles. Upon arrival, Claimant reported having a few beers and a couple of tequilas and having an altercation that evening. (Tr. 169). Claimant reported head pain. (Tr. 169). Dr. Rothert removed the long board and instructed Claimant to leave c-collar in place. (Tr. 170). The nurse notes indicate that Claimant had removed the c-collar and cardiac monitor, and was sitting in a bed side chair requesting a cigarette. The nurse noted that she was unable to reason with Claimant regarding the c-collar. Claimant also refused to have a CT scan until smoking a cigarette, and her husband assisted in getting Claimant to go have the CT scan. Scalp abrasion is listed as Claimant's final diagnosis. (Tr. 170). The CT of Claimant's brain showed no acute intracranial findings and left parietal scalp swelling. (Tr. 173). The CT of her cervical spine showed no acute fracture or bony abnormality and the central canal and neural foramina to be patent. (Tr. 174). The x-ray of her left elbow showed no fracture and the elbow to be within normal limits. (Tr. 175).

On September 24, 2008, Claimant reported headaches and dizziness in the emergency room at Saint Francis Medical Center. (Tr. 176). Claimant's headaches started four days earlier and have changed in character. Claimant reported a history of pulmonary disease including COPD, with use of inhaler. (Tr. 176). Claimant reported neck pain, nausea, and tinnitus. (Tr. 177). The examiner noted Claimant appeared to be in pain. Examination showed tenderness over paraspinal muscles and contusion on the left elbow. (Tr. 177). The CT of Claimant's head was negative of the brain and improved soft tissue swelling over the left posterior parictal region. (Tr. 182).

In the Psychiatric Review Technique dated November 20, 2008, Dr. Kenneth Burstin, Ph.D., found Claimant to have no medically determinable impairment. (Tr. 183-93). In support, Dr. Burstin noted Claimant received medical treatment for an assault involving alcohol. (Tr. 192). Three days later, Claimant received treatment, and the doctor noted Claimant's memory and concentration to be normal, and no diagnosis of mental impairment was made. Dr. Burstin noted Claimant has no formal psychiatric treatment, and the evidence does not show any hospitalization of psychiatric symptoms. Dr. Burstin opined that Claimant's statements are not considered credible as there is no evidence in support in her file. (Tr. 193).

In the Case Analysis dated November 20, 2008, Dawn Horn of disability determinations noted that Claimant reported driving, shopping every other week for thirty to sixty minutes, being able to walk three blocks, and able to complete some household tasks. (Tr. 194). Ms. Horn found Claimant's statements to be considered partially credible inasmuch as they were not fully supported by the evidence in the file, and her impairment to be assessed as nonsevere. (Tr. 194).

## IV.    The ALJ's Decision

The ALJ found that Claimant has not engaged in substantial gainful activity since October 2, 2008, the application date. (Tr. 13). The ALJ found that the medical evidence establishes that Claimant has a medically determinable impairment. (Tr. 13). The ALJ concluded that Claimant has not been under a disability since October 2, 2008, the filing date of her application. (Tr. 15).

## V.     Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

> 5. Any corroboration by third parties of the claimant's impairments.
>
> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment.

A.  Severity of Claimant's Impairments

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment.

In her application for disability benefits, Claimant alleged disability due to inability to focus, blurred vision, dizziness after head injury, and pain down left side. The ALJ found Claimant has only slight abnormalities not significantly limiting the performance of any basic work activities, and concluded that the impairments, alone or in combination, are not of listing level. The Social Security regulations define a nonsevere impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b). In finding Claimant's impairments not to be severe impairments, the ALJ noted there is no corroborating evidence from any doctor finding Claimant to have blurred vision, numbness in her hands, or depression, and such alleged symptoms have not resulted in any significant limitations in her ability to do basic work activities. Further, the ALJ noted that Claimant takes over-the-counter medications for her headaches.[3] Likewise, the ALJ found the evidence to be devoid of documentation corroborating the allegation

---

[3] Although in her brief Claimant contends that the ALJ failed to consider her "traumatic mild brain syndrome," the undersigned notes that the medical record is devoid of such diagnosis.

of pain down her left side. Accordingly, the ALJ determined that the impairments did not have more than a minimal impact upon the Claimant's ability to engage in basic work-related activities such that it did not satisfy 20 C.F.R. §§ 404.1521 and 404.921.

The record shows that the ALJ did consider the nature of her impairments in reaching his decision. The undersigned notes that the fact that Claimant did not allege depression in her application for disability benefits is significant, even though she submitted some medical evidence of depression. In her application for disability benefits, Claimant alleged disability due to inability to focus, blurred vision, dizziness after head injury, and pain down left side. The ALJ found Claimant does not have a severe impairment and concluded that Claimant was not disabled. A review of Claimant's application shows that Claimant failed to allege depression as a basis for disability. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression was later developed). Claimant did not testify at the hearing that her depression affects her ability to function, and the ALJ fulfilled his duty of investigating this claim not presented in the application for benefits but for the first time raised by Claimant in her brief. The undersigned concludes that the ALJ did not err in discounting Claimant's depression. See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity). The ALJ opined "that there is no evidence of medications designed to treat psychiatric or mental symptoms." (Tr. 14). The undersigned finds the record is devoid of any evidence supporting Claimant's contention that her depression is severe. First, Claimant never alleged her depression to be disabling, and she presented no medical evidence

substantiating this claim. Claimant never alleged any limitation in function as a result of her depression in her application for benefits or during the hearing. Indeed, the medical evidence is devoid of any support. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)).

The record shows Claimant suffered a scalp abrasion, and the CT of her brain showed no acute intracranial findings and left parietal scalp swelling. The nurse notes indicate that Claimant removed the c-collar against doctor's orders. The nurse noted that she was unable to reason with Claimant regarding the c-collar. Claimant also refused to have a CT scan until smoking a cigarette, and her husband assisted in getting Claimant to go have the CT scan. The ALJ opined as follows:

> Radiological examination of her brain showed no intracranial mass effect or shift of the midline; she had no intracranial bleeding of subdural hematomas were present; ventricular size was appropriate. The bones windows were unremarkable; the orbits show no anatomic abnormalities. No functional limitations was noted by the physician. In other words, the examination was unremarkable.

(Tr. 13-14). The Court finds Claimant's contention that the ALJ erred in failing to find her impairments to be severe impairments and to determine their effect on her limitations to be without merit.

The evidence makes clear that Claimant was not taking any prescription pain medications. Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383,

386-87 (8th Cir. 1992)( finding it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost medical treatment for alleged pain and disability). Instead, Claimant took over-the-counter medications to treat her pain. Claimant contends that she was unable to obtain prescription medications due to a lack of insurance and financial constraints. The undersigned notes that the record is devoid of evidence suggesting that Claimant sought treatment offered to indigents or had been denied access to medical treatment or prescription pain medications on account of her financial constraints. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons); Murphy, 953 F.2d at 386-87 (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record does not document that Claimant was ever refused treatment due to insufficient funds. See Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he related of an inability to afford prescriptions and denial of the medication); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (If a claimant is unable to follow a prescribed regimen of medication and therapy to combat his difficulties because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits). The fact that a claimant is under financial strain, however, is not determinative. Id. Here, the record is devoid of any credible evidence showing that Claimant ever was denied medical treatment or access to prescription pain medications on account of financial constraints. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994). And,

Claimant elected to continue smoking cigarettes in lieu of using that money to help obtain medication and treatment. Riggins, 177 F.3d at 693.

Based on the objective medical evidence, the ALJ determined Claimant's impairments not to be severe impairments, and the undersigned finds that substantial evidence supports the ALJ's determination. The ALJ based this determination on substantial evidence from the medical record. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. Here, the ALJ addressed the medical records in his decision, and the undersigned finds the ALJ's findings are based on substantial evidence from the medical record as a whole.

The undersigned notes that where there are conflicts in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). This is so even when the medical evidence is in conflict. Cantrell, 231 F.3d at 1107; Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)("Where the medical evidence is equally balanced, ... the ALJ resolves the conflict."). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted).

Nonetheless, the ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints of constant pain were not credible. The credibility of Claimant's subjective complaints is especially important. Claimant has no medical evidence in

support of her testimony of extreme physical limitations due to pain. Specifically, the ALJ noted that the only medical treatment Claimant has received since 2008 was for the head injury after the assault, and the diagnostic testing revealed normal results. Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition). The ALJ further noted inconsistencies between Claimant's subjective complaints of pain and her daily activities. In addition, the ALJ considered the inconsistencies in Claimant's testimony at the administrative hearing and the statements made in the various administrative forms when assessing her credibility.

Finally, the ALJ noted that Claimant's sporadic work record undermined her credibility regarding the severity of her impairments alleged and her overall motivation to work versus motivation for benefits inasmuch as her record documents a scattered and somewhat erratic work record. A consistent work record supports a claimant's credibility, see Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001); conversely, an inconsistent work history does not, see Frederickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004); Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002); see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2002) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability.").

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, the courts normally defer to his credibility determination). The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed

out inconsistencies in the record that tended to militate against the Claimant's credibility. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of constant pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

Claimant also argues that the ALJ had a duty to order a consultative examination to determine her physical and mental impairments. An ALJ's duty to develop the record arises only if a crucial issue was undeveloped. The record contains medical evidence from the relevant time period regarding Claimant's alleged disabilities. See Onstead v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993) (reversal due to failure to develop the record is warranted only where the failure is unfair or prejudicial). The record show that Claimant's own statements are the only evidence supporting her alleged disabilities. However, Claimant's statements are insufficient to establish the existence of a physical impairment. See 20 C.F.R. § 416.912; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Here, Claimant has failed to do so. The undersigned finds the ALJ properly determined Claimant had no medically determinable impairments based on all of the relevant evidence of record.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the

record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's Complaint be dismissed with prejudice.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  9th  day of July, 2012.